**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

                Government,

                             **HONORABLE LAURIE J. MICHELSON**

    v.

                             **No. 22-20519**

**D4: MAIJAH GREENE,**

                Defendant.
_____/


**PLEA HEARING**

**Detroit, Michigan -- Thursday, July 11, 2024**


**APPEARANCES:**


**Jeanine Brunson, Esq.**
U.S. Attorney's Office
211 W. Fort Street, #2001
Detroit, Michigan 48226
Tel: (313) 226-9597
jeanine.brunson@usdoj.gov
On behalf of Government

**Randall C. Roberts, Esq.**
Attorney At Law
120 N. 4th Avenue
Ann Arbor, MI 48104
Tel: (734) 677-3393
randallcroberts51@yahoo.com
On behalf of Defendant

**David Patrick Cowen, Esq.**
U.S. Attorney's Office
211 W. Fort Street, #2001
Detroit, Michigan 48226
Tel: (313) 226-9100
david.cowen@usdoj.gov
On behalf of Government

**Title (Cont.)**

\-    \-    \-

To Obtain A Certified Transcript, Contact:
**Nefertiti A. Matthews, Official Court Reporter
Theodore Levin United States Courthouse
231 West Lafayette Boulevard
Detroit, Michigan  48226
www.transcriptorders.com • jodi_matthews@mied.uscourts.gov**

Proceedings recorded by mechanical stenography.
*Transcript produced by computer-aided transcription.*

**Plea Hearing**
**Thursday, July 11, 2024**

**I N D E X**

**- - -**

Hearing: <u>Page:</u> <u>Vol.:</u>

**Plea Hearing** .................................**4** **1**

Plea Accepted ................................46 1


Certification of Reporter ......................49

Exhibits:

None

1          **Detroit, Michigan**

2          **Thursday, July 11, 2024**

3          **10:24 a.m.**

4                    **- - -**

5          **THE CLERK:**  The court calls Case Number 22-20519; <u>The</u>

6    <u>United States of America versus Maijah Greene</u>.

7          Counsel, please state your appearance, for the record.

8          **MR. COWEN:**  Good morning, Your Honor.  David Cowen

9    and Jeanine Brunson, on behalf of The United States.

10         **THE COURT:**  Good morning.

11         **MR. ROBERTS:**  Good morning, Your Honor.  May it

12   please The Court.  My name is Randall Roberts, and I appear

13   today on behalf of Ms. Maijah Greene, who joins me at counsel's

14   table.

15                    **Plea Hearing**

16         **THE COURT:**  All right.  Thank you.  Good morning,

17   counsel.  Good morning, Ms. Greene.

18         After the final pretrial conference but prior to the

19   trial, The Court has been advised that Ms. Greene would like to

20   change her previously entered plea of not guilty to Count One

21   of the superseding indictment and now enter a plea of guilty to

22   that charge.  And Mr. Roberts, is that how Ms. Greene wishes to

23   proceed here today?

24         **MR. ROBERTS:**  Yes, Your Honor.

25         **THE COURT:**  And I did advise the parties at the final

1    pretrial conference that I would accept plea agreements

2    following the pretrial conference.  So, Mr. Roberts, why don't

3    I have you and Ms. Greene come up to the lecturn for me,

4    please.  Yes, right up here where the microphone is.

5          And as I've advised Ms. Greene before, she's charged in a

6    first superseding indictment with a conspiracy charge,

7    kidnapping conspiracy and then a substantive kidnapping count.

8    I've received, prior to going on the record today, a signed

9    plea agreement from the parties which indicates that Ms. Greene

10   is now prepared to enter a plea of guilty to Count One of the

11   first superseding indictment.

12         Mr. Roberts, will the change in plea today be pursuant to

13   the terms of this plea agreement?

14              **MR. ROBERTS:**  Yes, Your Honor.

15              **THE COURT:**  Ms. Greene, is this your signature on

16   page 17 of the plea agreement?

17              **THE DEFENDANT:**  Yes.

18              **THE COURT:**  Prior to signing this plea agreement, did

19   you have an opportunity to review it and discuss it with your

20   lawyer?

21              **THE DEFENDANT:**  Yes.

22              **THE COURT:**  From that review and discussion, do you

23   feel that you understand the terms of this plea agreement?

24              **THE DEFENDANT:**  Yes.

25              **THE COURT:**  And in a few minutes we're going to go

1    through this plea agreement in much more detail.  But there are

2    a lot of things that I want to explain to you before we do

3    that.

4         The first thing I want to do is make sure that you

5    understand the charge that you now intend to plead guilty to.

6    So, I'm going to ask Mr. Cowen or Ms. Brunson if you would

7    please advise Ms. Greene of the charge contained in Count One

8    by either reading or summarizing the first superseding

9    indictment for her.

10        **MR. COWEN:**  Yes, Your Honor.  The defendant is

11   charged in Count One with kidnapping conspiracy which alleges

12   on or about November 14th, 2021 through on or about

13   November 15th, 2021, Ms. Greene, along with others, conspired

14   or agreed to commit the crime of kidnapping and it had an

15   impact on interstate commerce.

16        **THE COURT:**  All right.  Thank you, Mr. Cowen.

17        And Ms. Greene, do you understand the charge that the

18   lawyer for the Government just explained to you?

19        **THE DEFENDANT:**  Yes.

20        **THE COURT:**  Is this the charge that you now intend to

21   plead guilty to?

22        **THE DEFENDANT:**  Yes.

23        **THE COURT:**  A plea of guilty, if I accept that plea,

24   will result in a conviction.  Pleading guilty is an important

25   and significant decision.  So, before I decide whether to

1  accept your change in plea from "not guilty" to "guilty," there

2  are a number of questions that I need to ask you about the

3  facts of the crime and things that I need to explain to you

4  about the impact of pleading guilty.  Because I have to make

5  sure today that you fully understand what you are doing.  That

6  you fully understand the consequences of what you are doing.

7  And that you are making your decisions knowingly and

8  voluntarily.  Do you understand all of that?

9          **THE DEFENDANT:**  Yes.

10         **THE COURT:**  Because I'm going to get some information

11 from you, I need to put you under oath.  If you'd raise your

12 right hand for me, please.

13                    -   -   -

14              **MAIJAH GREENE,**

15      **at 10:28 a.m., being first duly sworn by the**

16      **Court to tell the truth, was examined and**

17      **testified upon oath as follows:**

18         **THE COURT:**  So, I'll first advise you, if you were to

19 provide any false information here today, that could be used

20 against you in a separate case for perjury or making a false

21 statement.  Do you understand that also?

22         **THE DEFENDANT:**  Yes.

23         **THE COURT:**  And I just indicated to you that I have

24 to make sure that you're making your decision here to plead

25 guilty knowingly and voluntarily.  I told you at the final

```
 1    pretrial conference that this decision has to be your own

 2    personal decision, it can't be a decision that your lawyer

 3    makes for you.

 4         So, in evaluating whether you're making this decision

 5    knowingly and voluntarily, I also have to determine whether

 6    you're mentally competent, mentally able to knowingly and

 7    voluntarily enter into a guilty plea.  So, I need to ask you

 8    just some general background questions about yourself and your

 9    mental health.

10         Can you tell me your full name, please?

11              THE DEFENDANT:  Maijah Renata Nayree [phonetic]

12    Greene.

13              THE COURT:  And Ms. Greene, how old are you?

14              THE DEFENDANT:  24.

15              THE COURT:  Much schooling did you complete?

16              THE DEFENDANT:  I graduated high school.

17              THE COURT:  You have any issues with reading,

18    writing, or understanding English?

19              THE DEFENDANT:  No.

20              THE COURT:  Any issues either today or throughout any

21    of these court proceedings, understanding the nature of the

22    proceedings?

23              THE DEFENDANT:  You ask me do I understand it?

24              THE COURT:  Have you been able to understand the

25    nature of the proceedings as this case has gone forward?
```

1         **THE DEFENDANT:**  Yeah.  Yes.

2         **THE COURT:**  And so far today have you been able to

3    understand the questions that I've been asking you?

4         **THE DEFENDANT:**  Yes.

5         **THE COURT:**  As this case has gone forward, do you

6    feel that you've been able to help your lawyer with your

7    defense?

8         **THE DEFENDANT:**  Yes.

9         **THE COURT:**  Have you ever been treated for any mental

10   illness or addiction to alcohol or narcotic drugs of any kind?

11        **THE DEFENDANT:**  Yes.

12        **THE COURT:**  And what were you treated for?

13        **THE DEFENDANT:**  I have bipolar and I'm ADHD.

14        **THE COURT:**  And when was the last time you received

15   treatment?

16        **THE DEFENDANT:**  I don't know, when I was, like, 17.

17        **THE COURT:**  And what was that treatment?  Counseling?

18   Medications? Both?

19        **THE DEFENDANT:**  Yeah, counseling and medication.

20        **THE COURT:**  And do you still take any medications?

21        **THE DEFENDANT:**  No.

22        **THE COURT:**  Do you feel that you need medications?

23        **THE DEFENDANT:**  No.

24        **THE COURT:**  Anything about the bipolar disorder or

25   ADHD that might be affecting your ability to think or to reason

1   or to make decisions today or throughout the course of this

2   case?

3                   **THE DEFENDANT:**  No.

4           **THE COURT:**  Is there anything today that you think

5   could be affecting your ability to think or to reason or to

6   make decisions?

7                   **THE DEFENDANT:**  No.

8           **THE COURT:**  Are you under the influence today of any

9   alcohol, any medications, any narcotic drugs?

10                  **THE DEFENDANT:**  No.

11          **THE COURT:**  Other than what you told me you've

12  previously been diagnosed with, do you have any other mental

13  condition or disability that would prevent you from fully

14  understanding the charges against you or fully understanding

15  the consequences of pleading guilty?

16                  **THE DEFENDANT:**  No.

17          **THE COURT:**  In terms of evaluating your mental

18  competency, is there anything else about your mental health

19  that you think I should be aware of?

20                  **THE DEFENDANT:**  No.

21          **THE COURT:**  Okay.  And I appreciate the information.

22     And Mr. Roberts, I know you've been representing

23  Ms. Greene.  You've had opportunities to interact with her.  Is

24  there anything that you feel I should know about Ms. Greene's

25  mental competency?

1          **MR. ROBERTS:**  No.

2          **THE COURT:**  Do you believe she's able to understand

3    the proceedings today and to answer my questions?

4          **MR. ROBERTS:**  Quite, yes.

5          **THE COURT:**  And do you believe she's mentally

6    competent to knowingly and voluntarily enter into a guilty

7    plea?

8          **MR. ROBERTS:**  Yes, Your Honor.

9          **THE COURT:**  Mr. Cowen, does the Government have any

10   concerns as to whether Ms. Greene is mentally competent to

11   knowingly and voluntarily enter into a guilty plea?

12         **MR. COWEN:**  No concerns, Your Honor.  Thank you.

13         **THE COURT:**  All right.  Thank you.

14       This case has had a number of proceedings so I have had an

15   opportunity to interact with Ms. Greene a few times and a

16   little bit more today.  And from what I've heard from her and

17   from counsel, I agree that she's mentally competent to

18   knowingly and voluntarily enter into a guilty plea.  I will

19   note, for the record, that her bearing and demeanor today are

20   focused, oriented, and alert in all respects and so we will

21   move forward with the change-in-plea proceeding.

22       Ms. Greene, you have previously been advised or either the

23   Magistrate Judge or myself should have advised you that you

24   have the right to be represented by a lawyer at all critical

25   stages of this case.  Mr. Roberts is with you this morning.

**Plea Hearing**
**Thursday/July 11, 2024**                                    12

1   He's been representing you for awhile.  Have you discussed this

2   case with him and the issue of pleading guilty?

3                **THE DEFENDANT:**  Yes.

4                **THE COURT:**  Were you able to ask him any and all

5   questions that you may have had about pleading guilty?

6                **THE DEFENDANT:**  Yes.

7                **THE COURT:**  Was he able to answer those questions for

8   you?

9                **THE DEFENDANT:**  Most of them.

10               **THE COURT:**  Are there some that you'd still like to

11  discuss with him?

12               **THE DEFENDANT:**  No.

13               **THE COURT:**  The ones that he wasn't able to answer,

14  do you want to discuss those now?

15               **THE DEFENDANT:**  I mean, he just doesn't have the

16  answer for them, so, it's not up to him.

17               **THE COURT:**  All right.  There may have been things

18  that he didn't have an answer for you.

19               **THE DEFENDANT:**  Yes.

20               **THE COURT:**  It's not that he wouldn't provide an

21  answer.

22               **THE DEFENDANT:**  Yes.

23               **THE COURT:**  Do you feel like you need or want any

24  additional time to meet with him to discuss this issue of

25  pleading guilty?

**Plea Hearing**
**Thursday/July 11, 2024**

1      **THE DEFENDANT:**  No.

2          **THE COURT:**  Do you feel like you've had enough time

3    to think things over and to decide how you want to go forward,

4    in this case, in terms of pleading guilty or going to trial in

5    a few weeks?

6          **THE DEFENDANT:**  Yes.

7          **THE COURT:**  Were you able to discuss with Mr. Roberts

8    the evidence against you and any defenses that you might have

9    to that evidence?

10         **THE DEFENDANT:**  Yes.

11         **THE COURT:**  Were you able to discuss with him the

12   advantages and disadvantages of pleading guilty versus going to

13   trial?

14         **THE DEFENDANT:**  Yes.

15         **THE COURT:**  Have you been satisfied with the advice

16   and services that he's provided to you in this case?

17         **THE DEFENDANT:**  Yes.

18         **THE COURT:**  Are there any issues with his

19   representation of you that I should be aware of?

20         **THE DEFENDANT:**  No, Ma'am.

21         **THE COURT:**  Have you decided then, Ms. Greene, that

22   it is in your own best interest to plead guilty to Count One of

23   the first superseding indictment?

24         **THE DEFENDANT:**  Yes.

25         **THE COURT:**  You have a right to plead not guilty to

1    that charge or to continue with your previously entered not

2    guilty plea.  If you were to continue with your not guilty

3    plea, you would have the protection of a number of

4    Constitutional Rights.  I'm going to explain those rights to

5    you.  I'm going to advise you of what those rights are.  And

6    then I'm going to see if you want to waive or give up those

7    rights in order to plead guilty to Count One of the first

8    superseding indictment.  Do you understand all of that?

9               **THE DEFENDANT:**  Yes.

10              **THE COURT:**  I've already told you that you have the

11   right to plead not guilty to the charges against you.

12        You have the right to a speedy and public trial by jury.

13        You have the right to be presumed innocent, unless and

14   until the Government has proved you guilty beyond a reasonable

15   doubt.

16        You have the right to see and hear all witnesses called to

17   testify against you and the right to cross examine them.

18        You have the right to have the court order any witnesses

19   you have for your defense to appear at the trial.

20        You have the right to take the witness stand or not as you

21   choose and you cannot be required to take the witness stand and

22   testify.  If you do not take the witness stand and testify,

23   your silence cannot be used against you in any way.

24        Do you understand these rights that I've read to you?

25              **THE DEFENDANT:**  Yes.

**Plea Hearing**
**Thursday/July 11, 2024**
15

1          **THE COURT:**  Do you also understand that if you plead

2     guilty and if I accept your plea of guilty, you will be found

3     guilty without a trial and you will have given up those rights

4     that I've just read to you?

5          **THE DEFENDANT:**  Yes.

6          **THE COURT:**  Is that what you want to do?  Do you want

7     to give up those rights in order to plead guilty to Count One

8     of the first superseding indictment?

9          **THE DEFENDANT:**  Yes.

10         **THE COURT:**  There are other consequences of pleading

11     guilty that I want to discuss with you and make sure that you

12     understand.  The charge of kidnapping conspiracy under 18

13     United States Code Section 1201(a)(1) and (c), this is a felony

14     offense.  I want to make sure you understand if you plead

15     guilty and if I accept your guilty plea, you will be found

16     guilty of a felony.  And that finding could deprive you of a

17     number of valuable civil rights, including the right to vote,

18     if you're in jail; the right to serve on a jury; the right to

19     secure certain licenses and certain jobs.  And under the law,

20     as it currently exist, the right to possess any firearms or

21     ammunition in the future.  Do you understand that?

22         **THE DEFENDANT:**  Yes.

23         **THE COURT:**  When someone is convicted, either from a

24     guilty plea or if you were to go to trial and be convicted,

25     there are a range of penalties that The Court can impose.  I

1    need to make sure that you understand those as well.  One of

2    those penalties is prison time.  And under the law that you're

3    charged with, there is a maximum prison time of life.  Do you

4    understand that?

5              **THE DEFENDANT:**  Yes.

6              **THE COURT:**  In the federal system if somebody is

7    sentenced to prison, we also have what's called "Supervised

8    Release."  And supervised release is the period of time after

9    you're released from prison where The Court would impose a

10   number of rules and requirements that pertain to the way that

11   you live in the community.  If you were to violate any of those

12   requirements, you could receive additional jail time.  Do you

13   understand that concept of supervised release?

14             **THE DEFENDANT:**  Yes.

15             **THE COURT:**  Here, the maximum, the most supervised

16   release that I could give you will be a term of five years.  Do

17   you understand that?

18             **THE DEFENDANT:**  Yes.

19             **THE COURT:**  When there's a conviction, there are also

20   some economic or money penalties.  One of those is a fine.  And

21   under this law that you're charged with, there's a maximum fine

22   of $250,000.  Do you understand that?

23             **THE DEFENDANT:**  Yes.

24             **THE COURT:**  There's also what's called a, "Special

25   Assessment."  And the special assessment is a $100 fee that you

1  have to pay for every count of conviction.  So, here, we'll

2  have one count of conviction, Count One, so, you'll have to pay

3  a $100 special assessment.  Do you understand that also?

4          **THE DEFENDANT:**  Yes.

5          **THE COURT:**  And remind me, Mr. Cowen, is there

6  restitution or forfeiture?

7          **MR. COWEN:**  No forfeiture, Your Honor; but

8  restitution is eligible and to be determined.

9          **THE COURT:**  So, there's a potential penalty that we

10  refer to as restitution.  And what restitution means is that as

11  a result of your wrongdoing someone was harmed or injured and

12  The Court might order you to make it up to that person, to make

13  them whole in some way.  Do you understand that concept of

14  restitution?

15          **THE DEFENDANT:**  Yes.

16          **THE COURT:**  There are also potential immigration

17  consequences if somebody gets convicted and they are not a

18  United States citizen.  So, I do need to ask you, are you a

19  United States citizen?

20          **THE DEFENDANT:**  Yes.

21          **THE COURT:**  So, we don't have to worry about any

22  immigration consequences.

23      So, Ms. Greene, do you understand all of those possible

24  consequences of pleading guilty that I've just explained to

25  you?

**Plea Hearing**
**Thursday/July 11, 2024**

18

1          **THE DEFENDANT:**  Yes.

2          **THE COURT:**  Do you have any questions about them?

3          **THE DEFENDANT:**  No.

4          **THE COURT:**  Are you currently on probation, parole,

5     or under court supervision in any other case right now?

6          **THE DEFENDANT:**  No.

7          **THE COURT:**  Okay.  So, as we just discussed, one of

8     the consequences of pleading guilty is that you could be

9     sentenced to prison time.  So, I want to explain a few things

10     today about sentencing.  That's not something we do today,

11     that, we will do a few months from today.

12          When it comes time for me to determine your sentence,

13     there are a number of things the law requires me to consider.

14     One of them is what we call, "The Sentencing Guidelines."  And

15     the sentencing guidelines -- and we've talked about this at the

16     final pretrial conference -- the sentencing guidelines combine

17     the seriousness of the underlying offense with your criminal

18     history to give me a recommended range of sentences.  And the

19     guidelines have a table in the back that contain all of the

20     possible ranges.  And a range could be anything from as low as

21     0 to 6 months, to a midpoint of 120 to 150 months, to a range

22     of life.

23          Do you understand the general concepts of how the

24     sentencing guidelines work?

25          **THE DEFENDANT:**  Yes.

1    **THE COURT:**  When I sentence you, though, I don't only

2  consider the sentencing guidelines.  In addition to the range,

3  there are a number of factors that I will also consider and

4  those are sentencing factors that have to do primarily with the

5  purposes of sentencing.  They will include things like your

6  history and characteristics and the nature and circumstances of

7  the offense.  I also have to consider a sentence that reflects

8  the seriousness of the offense; promotes respect for the law;

9  provides adequate deterrence; punishment; protection of the

10 public; and also provide you with necessary treatment and

11 training.  I have to avoid unwarranted sentencing disparities.

12   So, I want to make sure you understand in addition to the

13 guideline range, there are a number of other sentencing factors

14 that I will also consider.  Do you understand that?

15    **THE DEFENDANT:**  Yes.

16    **THE COURT:**  And after I consider all of those things,

17 and after I review everything that the parties give to me

18 before sentencing, after I hear from the parties at sentencing,

19 I could decide to sentence you within the guideline range that

20 I calculate; but I could also decide to sentence you higher

21 than that range or lower than that range.  Do you understand I

22 have that authority?

23    **THE DEFENDANT:**  Yes.

24    **THE COURT:**  Here, and would be true of any case, I

25 could not sentence you to more than the statutory maximum of

1  life.  Do you understand that?

2       **THE DEFENDANT:**  Yes.

3       **THE COURT:**  All right.  And I always ask the

4  Government to give me some information about what they think

5  your guideline range might be because at these change-in-plea

6  proceedings I'd like you to have some understanding of what the

7  Government thinks that might be and we went through that at the

8  pretrial conference.

9       When I calculate a guideline range, Ms. Greene, I have to

10  use a lot of provisions from the Sentencing Guideline's Manual.

11  And I have to determine a base offense level for the offense

12  and then I have to determine if there are certain things that

13  add to that base offense level or certain things that substract

14  from that base offense level.  And I understand the parties are

15  not in perfect agreement about some of the additions or

16  substractions.

17       Understanding that, though, have you been able to discuss

18  with Mr. Roberts the Government's calculation of what they

19  think your guideline range might be?

20       **THE DEFENDANT:**  Yes.

21       **THE COURT:**  And were you also able to discuss with

22  him any and all questions that you may have had about the

23  sentencing guidelines?

24       **THE DEFENDANT:**  Yes.

25       **THE COURT:**  Was he able to answer those questions for

 1  you?

 2  　　　　**THE DEFENDANT:**  Yes.

 3  　　　　**THE COURT:**  And do you feel like you need or want any

 4  additional time to discuss anything about the sentencing

 5  guideline range with Mr. Roberts?

 6  　　　　**THE DEFENDANT:**  No.

 7  　　　　**THE COURT:**  Mr. Roberts, have you also done a

 8  preliminary calculation of the guideline range?

 9  　　　　**MR. ROBERTS:**  Yes, Your Honor.

10  　　　　**THE COURT:**  And is that something you've discussed

11  with Ms. Greene?

12  　　　　**MR. ROBERTS:**  Yes.

13  　　　　**THE COURT:**  To the extent that your calculation is

14  different from the Government's calculation, is that also

15  something you've been able to discuss with her?

16  　　　　**MR. ROBERTS:**  Yes.

17  　　　　**THE COURT:**  Ms. Greene, do you understand these

18  calculations that the lawyers have done?

19  　　　　**THE DEFENDANT:**  Yes.

20  　　　　**THE COURT:**  First, those are preliminary, they could

21  change.  Do you understand that?

22  　　　　**THE DEFENDANT:**  Yes.

23  　　　　**THE COURT:**  Maybe more importantly, though, do you

24  understand their calculations are not binding on me.  I will do

25  my own, independent calculation of your guideline range?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Do you understand that ultimately I will

3    be the one making the decision about your guideline range?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Do you also understand that ultimately I

6    will be the one making the decision about your sentence?

7           THE DEFENDANT:  Yes.

8           THE COURT:  And I would expect you to talk with your

9    lawyer about what he thinks your sentence might be in this

10   case.  But do you understand that my decision about your

11   sentence could be different than what the lawyers tell you they

12   think your sentence might be here?

13          THE DEFENDANT:  Yes.

14          THE COURT:  So, do you have any questions about the

15   sentencing guidelines before we continue here today?

16          THE DEFENDANT:  No.

17          THE COURT:  You feel like you understand how they

18   might apply here?

19          THE DEFENDANT:  Yes.

20          THE COURT:  All right.  And in the federal system we

21   don't have parole, which means if you're sentenced to prison

22   time, you won't be released on parole.  Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  When we started, Mr. Cowen advised you of

25   the nature of the charge that has been brought against you in

**Plea Hearing**
**Thursday/July 11, 2024**                                    23

```
 1   the first superseding indictment, which is the charging

 2   document.  Have you also had a chance to review the first

 3   superseding indictment?

 4               THE DEFENDANT:  Yes.

 5          THE COURT:  Have you also had a chance to discuss the

 6   charges in that document with your lawyer?

 7               THE DEFENDANT:  Yes.

 8          THE COURT:  Has he also explained to you the nature

 9   of the charges against you?

10               THE DEFENDANT:  Yes.

11          THE COURT:  What I'm going to do now I'm going to ask

12   Mr. Cowen to explain to you the essential elements of

13   kidnapping, conspiracy.  And what I mean by, "Essential

14   Elements," those are the things the Government would have to

15   prove at trial, beyond a reasonable doubt, before you could be

16   found guilty of this offense. I want to make sure that you

17   understand these elements and that you do believe the

18   Government could prove them, beyond a reasonable doubt, at

19   trial.  You understand that?

20               THE DEFENDANT:  Yes.

21          THE COURT:  All right.  So, Mr. Cowen, if you could

22   please advise Ms. Greene of the essential elements of

23   kidnapping conspiracy.

24          MR. COWEN:  Yes, Your Honor.

25       The elements of Count One are:
```

1        First, two or more persons conspired or agreed to commit

2    the crime of kidnapping.  The crime of kidnapping is committed

3    if, One, a person knowingly and willfully kidnap, seize,

4    confine or abducted Victim One, the individual, identified in

5    the first superseding indictment; Second, the person held

6    Victim One with the intent to receive a reward or other

7    benefit; and, Third, the person used a means, facility, or

8    instrumentality of interstate commerce in kidnapping, seizing,

9    confining or abducting Victim One or in furtherance of

10   kidnapping Victim One.

11       Second, the defendant, Ms. Greene, knowingly and

12   voluntarily joined the conspiracy.

13       And Third, the defendant, Ms. Greene, or one of her

14   co-conspirators did one of the overt acts described in the

15   first superseding indictment for the purpose of advancing or

16   helping the conspiracy.

17           **THE COURT:**  Thank you, Mr. Cowen.

18       Ms. Greene, do you understand those three elements and the

19   sub-elements that Mr. Cowen just explained to you?

20           **THE DEFENDANT:**  Yes.

21           **THE COURT:**  There's been a lot of discovery that has

22   been provided to the defendants in this case.  Have you

23   reviewed those materials or have you otherwise learned how the

24   facts the Government could prove at trial would prove these

25   elements beyond a reasonable doubt?

**Plea Hearing**
**Thursday/July 11, 2024**                                    25

1          **THE DEFENDANT:**  A few of them, yeah.

2          **THE COURT:**  You think there's some they couldn't

3    prove beyond a reasonable doubt?

4          **THE DEFENDANT:**  Yes.

5          **THE COURT:**  So, there are some that you don't believe

6    they would be able to establish that you're guilty of this

7    offense?

8          **THE DEFENDANT:**  Yes.

9          **THE COURT:**  So, you don't believe you are guilty of

10   this offense?

11         **THE DEFENDANT:**  Yes, I do.  But it's still some

12   things that they can't prove that I participated in; but it's

13   some things that they can.

14         **THE COURT:**  All right.  And that might be the nature

15   of a conspiracy but that's different than whether you think the

16   Government can prove all of these elements.  Because for you to

17   be found guilty, as I said, the Government would have to be

18   able to prove all of these elements, beyond a reasonable doubt.

19         **MR. ROBERTS:**  May I ask?

20         **THE COURT:**  Yes.

21         **MR. ROBERTS:**  Ms. Greene, is what you're focusing on

22   is that you were not involved in the planning in the beginning

23   of this?

24         **THE DEFENDANT:**  Um-hum, yeah.

25         **MR. ROBERTS:**  And that you are were not involved in

 1   the original endangering that turned into captivity?

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  Well, maybe I should ask it more

 4   directly.  Which -- so there are three elements of the offense

 5   and the first element has three subparts.  Which element is it

 6   that you don't believe the Government could prove, beyond a

 7   reasonable doubt?

 8              THE DEFENDANT:  Um, the first one:  "Two or more

 9   persons conspired or agreed to commit the crime of kidnapping."

10              MR. ROBERTS:  May I assist?

11              THE COURT:  Yes.

12              MR. ROBERTS:  You're focusing on that particular

13   element, is that because you joined this conspiracy after that

14   kidnapping had actually initially happened?

15              THE DEFENDANT:  I guess.

16              MR. ROBERTS:  You were somewhere else that day and

17   you received a phone call?

18              THE DEFENDANT:  Yep.

19              MR. ROBERTS:  Did the first phone call advise you

20   that your cousin, Cortez Blake, had been carjacked and shot?

21              THE DEFENDANT:  Yes.

22              MR. ROBERTS:  What time was that?  Do you know?

23              THE DEFENDANT:  I don't remember, it was three year's

24   ago.

25              MR. ROBERTS:  Where were you when you received that

1   information?  A baby shower?

2           **THE DEFENDANT:**  At a baby shower.

3           **MR. ROBERTS:**  Okay.  And then did you receive another

4   phone call that asked you to do something?

5           **THE DEFENDANT:**  Yes.

6           **MR. ROBERTS:**  And what did that phone call ask you to

7   do for the person on the phone?

8           **THE DEFENDANT:**  Come in and facilitate.

9           **MR. ROBERTS:**  Okay.  Well, let's just talk in real

10  terms and not those big fancy words.  What did you understand

11  that you were being asked to participate in when you received

12  that phone call, the second one?

13          **THE DEFENDANT:**  I was coming over to beat somebody

14  up.

15          **MR. ROBERTS:**  For what?

16          **THE DEFENDANT:**  For her being involved in the setup

17  carjacking.

18          **MR. ROBERTS:**  And to get some information from her?

19          **THE DEFENDANT:**  Them weren't the words used, but . .

20  .

21          **MR. ROBERTS:**  Okay.  Whatever words were used.  You

22  were the one at the call.  The Judge would like to hear what

23  you were asked?

24          **THE DEFENDANT:**  Oh, yeah --

25          **THE COURT:**  Well, no, I actually don't.  And I

1    understand that the offense of conspiracy can be a difficult

2    one for somebody to understand, especially because you don't

3    have to be involved in every act of the conspiracy.  You don't

4    have to know every act of the conspiracy.  You don't even have

5    to know all of the co-conspirators, necessarily.

6         But one of the elements of the offense is that two or more

7    persons agreed to commit the crime of kidnapping.  And there's,

8    as I said, there's been no shortage of discovery produced here.

9    You're obviously aware of your role and we may get to that when

10   we get to the factual basis of the plea.

11        And so I'm trying to understand why you don't think at

12   trial the Government could prove, beyond a reasonable doubt,

13   that two or more persons agreed to commit the crime of

14   kidnapping.

15        **THE DEFENDANT:**  First, in the discovery -- first,

16   there was no evidence of anybody conspiring or talking about

17   this, for one.  Nothing toward me and me conspiring toward it

18   in the beginning.  This is all of somebody saying that they

19   came together and planned this.  But in our discovery, there's

20   literally nothing that says, "Oh, these two people said or did

21   this" or "We know that they did this."  No, it's nothing of

22   discovery of that sort at all.

23        **THE COURT:**  Okay.  Mr. Roberts, I'm going to -- if

24   you want to have some additional discussions with Ms. Greene,

25   but if she doesn't believe the Government could prove the

 1    elements of the offense, I don't know that I'm prepared to

 2    accept her guilty plea.  And I don't know why I would if she

 3    doesn't think the Government can prove the case.

 4            **THE DEFENDANT:**  I mean, you told me not to lie.

 5            **THE COURT:**  Oh, yeah.  No, no, I don't want you to

 6    lie.  And that includes pleading guilty to something you didn't

 7    think you did.

 8        So, why don't we take a short adjournment and let you

 9    address the concept of conspiracy with Ms. Greene and then

10    we'll reconvene in 10 or 15 minutes.

11        Okay.  We'll be in recess.

12            **THE CLERK:**  Court is in recess.

13            **(A break was taken from 10:58 a.m. to 11:15 a.m.)**

14                        **-  -  -**

15            **THE CLERK:**  The court recalls Case Number 22-20519;

16    The United States of America versus Maijah Greene.

17        Counsel, please restate your appearances, for the record.

18            **MR. COWEN:**  David Cowen and Jeanine Brunson, on

19    behalf of the United States.

20            **MR. ROBERTS:**  Randall Roberts, on behalf of the

21    defendant.

22            **THE COURT:**  All right.  Thank you.  Mr. Roberts, if

23    you and Ms. Greene could come back to the podium for me.

24        I want to see if maybe I can approach this from a little

25    different angle because as I said, I understand the concept of

1    conspiracy is a challenging one, as is, given the amount of

2    discovery here, I understand, Ms. Greene, that you might be in

3    a position where you might question whether at trial the

4    Government could prove these elements, beyond a reasonable

5    doubt; but you might also think that they could and that

6    there's risk in doing that.

7         Where I think I have more of a concern is in the factual

8    basis, which I haven't gotten to yet.  But I'm going to skip

9    ahead a little bit because the first sentence of the factual

10   basis of your plea agreement says that:

11        "On November 14, 2021, Maijah Greene knowingly and

12   voluntarily joined an agreement to unlawfully kidnap and hold

13   Victim One against her will within the Eastern District of

14   Michigan."

15        And I'm going to get to a point in this proceeding where

16   I'm going to ask you if that is a truthful and accurate

17   statement.  And when I read it before I went on the record

18   today, if that is a truthful and accurate statement it would

19   seem to support the elements of the count of conviction.

20        So, is that a truthful and accurate statement?

21            **THE DEFENDANT:**  Yes.

22            **THE COURT:**  So, if on November 14, 2021, you

23   knowingly and voluntarily joined an agreement to unlawfully

24   kidnap and hold Victim One against her will within the Eastern

25   District of Michigan --

**Plea Hearing**
**Thursday/July 11, 2024**

31

1          THE DEFENDANT:  Yes.

2          THE COURT:  --would that seem to satisfy the element

3   of Count One that says:  "Two or more persons conspired or

4   agreed--", means agreed, "Two or more persons agreed to commit

5   the crime of kidnapping"?

6          THE DEFENDANT:  Yes.

7          THE COURT:  All right.  Let me see where we get as we

8   proceed here and get into that factual basis in some more

9   detail.

10       You have indicated to me, though, that you've reviewed

11  this first superseding indictment, right?

12         THE DEFENDANT:  Yes.

13         THE COURT:  And you've discussed the charges with

14  Mr. Roberts, correct?

15         THE DEFENDANT:  Yes.

16         THE COURT:  We've discussed the charge here again

17  today and you told me you understand that charge and now we've

18  discussed the essential elements of that charge.  Having done

19  all of that, do you understand, fully understand, the charge

20  that's been brought against you in Count One of the first

21  superseding indictment?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Is this the charge that you intend to

24  plead guilty to?

25         THE DEFENDANT:  Yes.

**Plea Hearing**
**Thursday/July 11, 2024**

1    **THE COURT:**  Do you also understand that you're

2    pleading guilty pursuant to the terms of a plea agreement

3    between you and the Government?

4    **THE DEFENDANT:**  Yes.

5    **THE COURT:**  We've talked about some of this plea

6    agreement already.  You told me when we started that you had an

7    opportunity before you signed this plea agreement to review it

8    and discuss it with your lawyer; is that correct?

9    **THE DEFENDANT:**  Yes.

10   **THE COURT:**  Ms. Greene, before you signed this plea

11   agreement, were you able to ask Mr. Roberts any and all

12   questions that you may have had about this plea agreement?

13   **THE DEFENDANT:**  Yes.

14   **THE COURT:**  Was he able to answer your questions?

15   **THE DEFENDANT:**  Yes.

16   **THE COURT:**  Do you feel like you need or want any

17   additional time to discuss any aspect of this plea agreement

18   with him?

19   **THE DEFENDANT:**  No.

20   **THE COURT:**  Do you feel like you understand all of

21   the terms of this plea agreement?

22   **THE DEFENDANT:**  Yes.

23   **THE COURT:**  I appreciate that.  It is an important

24   document.  It's an important agreement.  I want to make sure

25   that you do fully understand it.  So, I'm going to ask

1  Mr. Cowen, if you will please state, for the record, and for

2  Ms. Greene, the key terms of the parties' plea deal?

3      MR. COWEN:  Your Honor, on Page 1, Paragraph 1, it

4  describes the count of conviction that the defendant would

5  plead guilty to Count One of the first superseding indictment

6  which is kidnapping conspiracy as we've discussed.

7      Paragraph 2, on Pages 1 and 2, discusses the maximum

8  penalties that The Court has already gone over with the

9  defendant if she is to be convicted of Count One.

10  Paragraph 3, outlines the Government's agreement to

11  dismiss Count Two of the first superseding indictment at the

12  time of sentencing through this plea agreement.

13  Paragraph 4, goes over the elements of the count of

14  conviction that I've previously read and that we've been

15  discussing.

16  Paragraph 5, on Pages 3, 4 discusses the factual basis

17  that we've eluded to and that The Court has briefly discussed.

18  Paragraph 6, outlines the defendant's Advice of Rights

19  that The Court has gone over, too, that she'll be giving up

20  through this agreement.

21  Paragraph 7, discusses the collateral consequences of a

22  conviction, in this case, as it relates to immigration status

23  The Court has gone over with and certain Constitutional Rights.

24  Paragraph 8, goes over the defendant's guideline range

25  which notes that The Court will determine that at the time of

1   sentencing as we've discussed already.  It also eludes in

2   Subparagraph "B" acceptance of responsibility being awarded for

3   a reduction of two levels by The Court in the Government's

4   agreement for the third point for a total of three.  There are

5   no other guideline recommendations between the parties and no

6   factual stipulations.

7       Paragraph 8E discusses the parties' obligations,

8   specifically that the defendant and the Government agree not to

9   take any position inconsistent with this plea agreement

10  specifically in Paragraphs "A", "B", "C" or "D".

11      On Page 9, at the top, Paragraph 8F is the title, "Not A

12  Basis to Withdraw," which describes that the defendant has no

13  right to withdraw from this agreement or withdraw from her

14  guilty plea if she disagrees in any way with the guideline

15  range that The Court ultimately calculates in this case;

16  likewise, the Government has no right to withdraw from its

17  obligation in this agreement if it does not agree with The

18  Court's guideline determination.

19      Paragraph 9, outlines what The Court has already discussed

20  with the defendant about calculating the guideline range and

21  sentence, including the sentencing factors in 18 U.S.C.

22  3553(a).

23      9B, titled "Imprisonment" and Government's recommendation

24  that the defendant's sentence not exceed the top end of her

25  guidelines as determined by The Court.

**Plea Hearing**
**Thursday/July 11, 2024**

35

1    9-2, discusses no right to withdraw.  That the

2    Government's recommendation is not binding on this court and

3    that the defendant will have no right to withdraw from this

4    agreement or withdraw her plea if The Court does not follow the

5    Government's recommendation.

6    There's no agreement as to supervised release.

7    There are no agreements as to fine.

8    On Page 11, it also reviews how restitution may be ordered

9    by The Court.

10   The Court has already discussed on Page 12 the special

11   assessment of a hundred dollars at the time of sentencing.

12   Paragraph 10, labeled, "Appeal Wavier," outlines that the

13   defendant has no right to appeal her sentence on any grounds

14   unless the imprisonment exceeds the top end of the guideline

15   range as determined by The Court.

16   Paragraph 11, discusses Collateral Review Wavier which

17   discusses how despite the defendant waiving most of her rights

18   to appeal, she does retain the right to claim ineffective

19   assistance of counsel or prosecutorial misconduct.  She also

20   retains the right to pursue relief under certain statutory

21   situations, for instance, Compassionate Release.

22   Paragraph 12 discusses certain remedies if there is a

23   withdrawal or a breach of this agreement, namely, that the

24   Government may reinstate any charges it has agreed to dismiss

25   or may file any additional charges related to the conduct in

 1    this case if the agreement is violated.

 2         Paragraph 13, discusses how the defendant agrees that if

 3    she's permitted to withdraw her plea for any reason, the

 4    Government may use her plea and any statements within it

 5    against her in any subsequent proceedings.

 6         Paragraph 14, outlines that this agreement is only binding

 7    on the U.S. Attorney's Office for the Eastern District of

 8    Michigan.

 9         Then Paragraph 15, discusses the scope of this agreement

10    and that the four corners of this document are the complete

11    agreement between the parties subject to any caveat carved out

12    within Paragraph 15.

13         Paragraph 16, contains the acceptance and the signatures

14    of the parties.

15         And it concludes on Page 17 with the defendant's signature

16    which this Court has already reviewed.

17              **THE COURT:**  Thank you, Mr. Cowen.

18         And Mr. Roberts, do you agree with the terms of the plea

19    agreement as just stated by the Government?

20              **MR. ROBERTS:**  Yes.

21              **THE COURT:**  That was very thorough.  Anything you'd

22    like to add?

23              **MR. ROBERTS:**  No.

24              **THE COURT:**  And do you believe that Ms. Greene fully

25    understood the plea agreement before she signed it?

**Plea Hearing**
**Thursday/July 11, 2024**                                    37

1          **MR. ROBERTS:**  I'm confident as I can be.

2          **THE COURT:**  Ms. Greene, do you agree with the terms

3     of the plea agreement as just stated by the Government?

4          **THE DEFENDANT:**  Yes.

5          **THE COURT:**  Do you understand the terms of the plea

6     agreement as stated by the Government?

7          **THE DEFENDANT:**  Yes.

8          **THE COURT:**  Mr. Cowen went through all of the

9     provisions.  I'm not going to go back through them.  I want to

10    deal with a few of them in a little more detail to make sure

11    you understand them.  There are things we've been addressing

12    today.

13         I explained to you earlier, advised you that I will be the

14    one determining your guideline range.  And when I determine

15    your guideline range, I've also given you some sense that there

16    are a lot of provisions of the Sentencing Guidelines Manual

17    that I will use to do that.  In this plea agreement, the

18    parties are going to make some recommendations to me about

19    provisions that one side or the other thinks I should use.  A

20    provision about the base offense level.  A provision about

21    whether you should get acceptance of responsibility credit.

22         You understand in this plea agreement these are

23    recommendations that The Court can follow or not as I deem

24    appropriate.  They're not binding on me.  Do you understand

25    that?

**Plea Hearing**
**Thursday/July 11, 2024**

38

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand if I don't follow these

3     recommendations that are in the plea agreement, that does not

4     give you a right to withdraw your guilty plea or withdraw from

5     this plea agreement.  Do you understand that also?

6          THE DEFENDANT:  Yes.

7          THE COURT:  If you do not agree with my calculation

8     of your guideline range, if you think my calculation is too

9     high or that I didn't use some of your recommendations, under

10    the terms of this plea agreement that also does not give you a

11    right to withdraw your guilty plea or withdraw from this plea

12    agreement.  Do you understand that also?

13         THE DEFENDANT:  Yes.

14         THE COURT:  In this plea agreement, the Government

15    has agreed to make a recommendation to me at sentencing.

16    They're going to recommend that the sentence that I give you

17    should not be more than the top of the guideline range that I

18    calculate.  Do you understand that is also just a

19    recommendation that is not binding on me?

20         THE DEFENDANT:  Yes.

21         THE COURT:  And what that means is if for some reason

22    I think your sentence should be more than the top of the

23    guideline range that I calculate and if I were to sentence you

24    to more than the top of the guideline range that I calculate,

25    that would not give you a right to withdraw your guilty plea or

**Plea Hearing**
**Thursday/July 11, 2024**                        39

 1    withdraw from this plea agreement.

 2                    **THE DEFENDANT:**  Yes.

 3            **THE COURT:**  The Government also mentioned the appeal

 4    wavier provision, and you probably know in a typical case if

 5    you were convicted you'd have a right to appeal, go to a higher

 6    court.  Go to the Sixth Circuit Court of Appeals.  By entering

 7    into this plea agreement, though, Paragraph 10, the Appeal

 8    Wavier, you are agreeing to give up your right to appeal the

 9    conviction that comes from your guilty plea.  Do you understand

10    that?

11                    **THE DEFENDANT:**  Yes.

12            **THE COURT:**  Under this plea agreement, and this is

13    what Paragraph 10 is explaining, if the sentence that I give

14    you is not more than the top of the guideline range that I

15    calculate, so if I calculate a guideline range and I sentence

16    you within that range or below that range, you are giving up

17    your right to appeal the sentence that I give you.  Do you

18    understand that as well?

19                    **THE DEFENDANT:**  Yes.

20            **THE COURT:**  And in addition to a direct appeal,

21    there's also another way to go to the Court of Appeals on what

22    we call "Collateral Review" or a "Habes Review."  And under

23    Paragraph 11 of your plea agreement, other than making

24    arguments that your lawyer was ineffective or the Government

25    engaged in misconduct, you're giving up your right to bring

1    other claims on Collateral Review.  Do you understand that?

2         THE DEFENDANT:  Yes.

3         THE COURT:  You could, though, in addition to

4    ineffective assistance of counsel or prosecutor misconduct, you

5    could also bring a motion for compassionate release.  Do you

6    understand that also?

7         THE DEFENDANT:  Yes.

8         THE COURT:  This agreement has a lot of information,

9    and I understand because we're dealing with a conspiracy count

10   and that can be technical.  That some of this is technical.  Do

11   you feel that you've had sufficient time and opportunity to

12   review this agreement and to discuss it with your lawyer?

13        THE DEFENDANT:  Yes.

14        THE COURT:  Now that we've gone through this

15   agreement in some more detail today, do you still believe you

16   understand it.

17        THE DEFENDANT:  Yes.

18        THE COURT:  Do you have any questions about it?

19        THE DEFENDANT:  No.

20        THE COURT:  Do you want to go forward with this

21   agreement?

22        THE DEFENDANT:  Yes.

23        THE COURT:  Other than what is set forth in this

24   agreement, has anyone made any other promises or assurances to

25   you of any kind in an effort to get you to plead guilty to

**Plea Hearing**
**Thursday/July 11, 2024**

41

1  Count One of the first superseding indictment?

2          **THE DEFENDANT:**  No.

3          **THE COURT:**  Has anyone told you that The Court would

4  go easy on you or that the Court would put you on probation or

5  that The Court would give you any specific sentence if you were

6  to plea guilty to Count One of the first superseding

7  indictment?

8          **THE DEFENDANT:**  No.

9          **THE COURT:**  Has anyone tried to force you to plead

10  guilty to Count One of the first superseding indictment by any

11  mistreatment, by any pressure, by any duress put upon you in

12  any way?

13          **THE DEFENDANT:**  No.

14          **THE COURT:**  Ms. Greene, how do you want to plead to

15  Count One of the first superseding indictment charging

16  kidnapping conspiracy?

17          **THE DEFENDANT:**  Guilty.

18          **THE COURT:**  Are you entering this plea of guilty

19  freely and voluntarily?

20          **THE DEFENDANT:**  Yes.

21          **THE COURT:**  Are you entering this plea of guilty

22  freely and voluntarily because, in fact, you are guilty and it

23  is your choice to plead guilty?

24          **THE DEFENDANT:**  Yes, Ma'am.

25          **THE COURT:**  Then I want to go back to the factual

```
 1   basis in your plea agreement.  It's Section 5 at pages 3 to 4.
 2   And the first paragraph explains the purpose of this section
 3   and it says:  "The parties agree", and by, "The Parties," that
 4   includes you.  So, this means the Government and you agree that
 5   the following facts are true, accurately describe your role in
 6   the offense and provide a sufficient factual basis for your
 7   guilty plea.  And one of the things that I'm looking for when I
 8   evaluate and determine whether there's an adequate or
 9   sufficient factual basis for the plea is whether the facts
10   establish the essential elements of the offense and that's why
11   I want to go through this with you because of your concerns or
12   understanding about the elements of the offense.
13        And I already mentioned the first sentence here of the
14   factual basis, it says:
15        "On November 14, 2021, Maijah Greene knowingly and
16   voluntarily joined an agreement to unlawfully kidnap and hold
17   Victim One against her will within the Eastern District of
18   Michigan."
19        Is that truthful and accurate?
20              THE DEFENDANT:  Yes.
21              THE COURT:  Then says:
22        "Members of the conspiracy, including Maijah Greene,
23   shared the mistaken belief that Victim One played some role in
24   carjacking and shooting their friend Cortez Blake."
25        Is that truthful and accurate?
```

**Plea Hearing**
**Thursday/July 11, 2024**

43

1              **THE DEFENDANT:**  Yes.

2              **THE COURT:**  Then it says:

3        "Members of the conspiracy sought to kidnap Victim One to

4    retaliate against Victim One and to obtain information from her

5    about the carjacking and shooting of Cortez Blake."

6           Is that truthful and accurate?

7              **THE DEFENDANT:**  Yes.

8              **THE COURT:**  Then it says:

9        "In furtherance of the crime, members of the conspiracy

10   used cellular telephones and social media to organize and

11   recruit others to facilitate the kidnapping."

12          Is that truthful and accurate?

13             **THE DEFENDANT:**  Yes.

14             **THE COURT:**  Then it says:

15       "Members of the conspiracy took Victim One and held Victim

16   One against her will at a house in Detroit.  They did this at

17   least, in part, to get information from Victim One."

18          Is that truthful and accurate?

19             **THE DEFENDANT:**  Yes.

20             **THE COURT:**  It then says:

21       "Members of the conspiracy took Victim One's cellular

22   phone and reviewed its contents to determine who was involved

23   in Cortez Blake's carjacking and shooting."

24          Is that truthful and accurate?

25             **THE DEFENDANT:**  Yes.

1   **THE COURT:** "A cellular telephone was used to recruit

2 and direct Maijah Greene to join the kidnapping of Victim One

3 at the residence where Victim One was held against her will.

4 Once there, Maijah Greene physically assaulted Victim One to

5 punish her and extract information from her while Victim One

6 was held against her will and while other people held and

7 pointed firearms at Victim One."

8   Is all of that truthful and accurate?

9   **THE DEFENDANT:** Yes.

10   **THE COURT:** The last sentence of the factual basis

11 says: "Victim One was released during the early morning hours

12 of November 15, 2021."

13   Is that truthful and accurate?

14   **THE DEFENDANT:** Yes.

15   **THE COURT:** Counsel, anything further you'd like to

16 inquire of Ms. Greene to ensure that we have an adequate

17 factual basis for the plea. Mr. Cowen?

18   **MR. COWEN:** No, Your Honor. The Government is

19 satisfied that everything has been covered.

20   **THE COURT:** And Mr. Cowen, it appears to me, based on

21 Ms. Greene's confirmation that the facts and the factual basis

22 are truthful and accurate that that would establish the

23 essential elements of the offense. Is that the Government's

24 view?

25   **MR. COWEN:** Yes, Your Honor, we believe the factual

1  basis supports the law and the elements in the count of

2  conviction.

3        **THE COURT:**  And Mr. Roberts, is that your view?

4        **MR. ROBERTS:**  Yes, it is.  My client's issue was that

5  because she didn't know about this at the very beginning, it's

6  always been her issue throughout the entire processing of this

7  case.

8        **THE COURT:**  Okay.  And so, Ms. Greene, now having had

9  the opportunity to have a little more time to discuss with

10  Mr. Roberts this concept of conspiracy and how it works and

11  acknowledging the truthfulness of this factual basis, do you

12  see where these facts that you're admitting to establish the

13  essential elements of the offense?

14        **THE DEFENDANT:**  Yes.

15        **THE COURT:**  All right.  Counsel, then if you're

16  satisfied that we have an adequate factual basis for the plea,

17  and it does seem that we do, and understanding Ms. Green's

18  issue and that not changing the fact that what she's admitted

19  to does establish the elements, are you satisfied The Court has

20  complied with all provisions of Rule 11 of the Federal Rules of

21  Criminal Procedures.  Mr. Cowen?

22        **MR. COWEN:**  Yes, the Government is satisfied.  Thank

23  you, Your Honor.

24        **THE COURT:**  And Mr. Roberts?

25        **MR. ROBERTS:**  Yes, Your Honor.

**Plea Accepted**
**Thursday/July 11, 2024**

1      **THE COURT:**  And just to close the circle, I should

2  ask Ms. Greene is if what is set forth in this factual basis,

3  is this what you did that makes you believe that you're guilty

4  of kidnapping conspiracy?

5      **THE DEFENDANT:**  Yes.

6      **THE COURT:**  All right.  Now that you've heard a

7  recitation of your rights; now that I've explained to you the

8  consequences of pleading guilty; and now that I've advised you

9  about the penalties that could be imposed, including

10  imprisonment, is it still your intention to plead guilty to

11  Count One of the first superseding indictment?

12      **THE DEFENDANT:**  Yes, Ma'am.

13      **THE COURT:**  And do you want me to still accept your

14  guilty plea?

15      **THE DEFENDANT:**  Yes, Ma'am.

16                        **Plea Accepted**

17      **THE COURT:**  I do believe that Ms. Greene does

18  understand what is at stake here, both in terms of the benefits

19  and risks of proceeding to trial and proceeding under the plea

20  agreement.  I do not see any indication of undisclosed promises

21  that are motivating her decision and I do not see any

22  indication of threats or coercion.

23      So, The Court does find that in the case of United States

24  versus Maijah Greene, that Ms. Greene is fully competent and

25  capable of entering an informed plea.  That she is aware of the

1   nature of the charges and the consequences of the plea.  And

2   that her plea of guilty is a knowing and voluntary plea

3   supported by her own statement of facts that she's acknowledged

4   in the plea agreement and that she's acknowledged again here

5   this afternoon, are truthful and accurate and represent what

6   she did.  And that factual basis, and what Ms. Greene has

7   admitted to, does contain all of the essential elements of the

8   offense.

9        And so, Ms. Greene, I am going to accept your guilty plea

10  to Count One of the first superseding indictment.  You're now

11  judged guilty of that offense.

12       What I'm going to do now, I'm going to refer your case to

13  the probation department.  They're going to assign it to a

14  probation officer.  That probation officer is going to

15  interview you.  Then the probation officer is going to prepare

16  what's called a, "Presentence Report."  That presentence report

17  is what I will use to help me calculate your guideline range

18  and evaluate the sentencing factors that I was explaining to

19  you earlier.

20       Mr. Roberts can be with you during that interview.

21  Probation officer is going to get information about your life.

22  Your family history.  Your educational history.  Your

23  employment history.  Your criminal history.  Your financial

24  history.  You will also receive a copy of the presentence

25  report.  You will have an opportunity to review it.  To discuss

**Plea Accepted**
**Thursday/July 11, 2024**

48

1    it with your lawyer and to make any objections that you have to

2    it to The Court prior to sentencing.

3         You will also have the opportunity, if you want, to

4    address The Court at sentencing, which I'm going to schedule

5    for November 24, 2024 at 3:00 p.m. I will remind counsel that I

6    do require sentencing memos no later than one week prior to the

7    sentencing.  So, sentencing memos will be due by November 13th.

8         With that then, is there anything further we need to do on

9    Ms. Greene's case today?  Anything for the Government?

10            **MR. COWEN:**  No, Your Honor.

11            **THE COURT:**  And Mr. Roberts, anything for Ms. Greene?

12            **MR. ROBERTS:**  No, Your Honor.  Thank you.

13            **THE COURT:**  All right.  Thank you.  We'll see you in

14   a few months.

15            **(Whereupon proceedings concluded at 11:47 a.m.)**

16                        -    -    -

17

18

19

20

21

22

23

24

25

**22-20519; United States of America v. D4: Maijah Greene**

```
 1
 2
 3
 4                              -   -   -
 5                    C E R T I F I C A T I O N
 6            I, Nefertiti A. Matthews, official court reporter
 7      for the United States District Court, Eastern District of
 8      Michigan, Southern Division, appointed pursuant to the
 9      provisions of Title 28, United States Code, Section 753,
10      do hereby certify that the foregoing is a correct
11      transcript of the proceedings in the above-entitled cause
12      on the date hereinbefore set forth.
13            I do further certify that the foregoing
14      transcript has been prepared by me or under my direction.
15
16      Date: July 30, 2024
17
18      s:/Nefertiti A. Matthews
        Nefertiti A. Matthews,
19      Official Court Reporter
20                              -   -   -
21
22
23
24
25
```